UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THERESA HUNTER,

            Plaintiff,

   v.

KAISER FOUNDATION HEALTH PLAN, INC., et al.,

           Defendants.

Case No. 19-cv-01053-WHO

**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION**

Re: Dkt. Nos. 27, 28

Plaintiff Theresa Hunter brings this class case against defendants Kaiser Foundation Health Plan, Inc. ("Kaiser") and its debt collector USCB, Inc. ("USCB") under California and federal law based on defendants' debt collection and credit reporting practices. Complaint, Dkt. No. 1. Hunter alleges that defendants regularly seek to unlawfully collect alleged balances from Medi-Cal beneficiaries for Medi-Cal covered services and furnish information about those alleged debts to consumer credit reporting agencies. The question here on defendants' motions to compel arbitration is whether the arbitration provisions in Hunter's contracts with Kaiser (that are identical in all respects) are valid. Federal law preempts California Health and Safety Code section 1363.1, so the arbitration provision applies, and it is neither procedurally or substantively unconscionable. It does not clearly contemplate class arbitration and does not prohibit the arbitrator from issuing public injunctive relief. For the reasons discussed below, the motions to compel arbitration by Kaiser and USCB are GRANTED.

**BACKGROUND**

**I.    ALLEGATIONS**

Medi-Cal, California's medical assistance program, pays medical costs for eligible people of limited financial means. Compl. ¶ 12. A medical service provider that accepts Medi-Cal payments (a "Medi-Cal provider") may not directly seek from the beneficiary any balance in excess of the amount approved by Medi-Cal; payment by Medi-Cal to the provider constitutes

1  payment in full.  *Id.* ¶¶ 12-13.  Therefore, there can never be a remaining balance due by a

2  beneficiary for Medi-Cal covered charges.  *Id.* ¶ 15.  Medi-Cal providers and debt collectors are

3  also prohibited from furnishing information regarding the rendering of any Medi-Cal covered

4  service to any consumer credit reporting agency.  *Id.* ¶¶ 16-18.

5      In 2012, Hunter was a Medi-Cal beneficiary.  She received medical services from Kaiser.

6  *Id.* at ¶ 22.  Despite that, Kaiser sought to collect from Hunter charges related to her Medi-Cal

7  covered services.  *Id.* at ¶ 25.  It engaged third-party debt collector USCB to assist it.  *Id.* at ¶ 26.

8  In early 2018, Hunter reviewed copies of her credit files from three national consumer credit

9  reporting agencies, Experian, Equifax, and Trans Union, because she was attempting to obtain a

10  mortgage to assist with the financing of a home purchase.  *Id.* at ¶ 28.  At that time, she discovered

11  USCB collection entries showing that she had an unpaid balance to Kaiser in excess of $9,000 for

12  the Medi-Cal covered services from 2012.  *Id.* at ¶ 29.

13      Hunter disputed the appearance of the USCB entries with the credit reporting agencies and

14  made several unsuccessful attempts to have the entries removed.  *Id.* at ¶¶ 33-34.  Experian

15  contacted USCB about Hunter's dispute and USCB contacted Kaiser, who confirmed to USCB

16  and Experian that Hunter was responsible for the charges.  *Id.* at ¶¶ 36-39.  Hunter alleges that

17  Kaiser also verified the debt to Trans Union and Equifax.  *Id.* at ¶ 40.

18      Hunter then filed a complaint with the Consumer Financial Protection Bureau ("CFPB")

19  which contacted the three credit reporting agencies, USCB, and the Office of the California

20  Attorney General (the "AG").  *Id.* at ¶¶ 42-43.  USCB responded to the CFPB that it would verify

21  the debt again with Kaiser, that it had not bought Hunter's debt, and that it was acting only as a

22  third-party debt collector contracted by Kaiser.  *Id.* at ¶¶ 44-47.  The Public Inquiry Unit of the

23  AG also notified Kaiser of Hunter's charges.  *Id.* at ¶ 48.  On May 30, 2018, Kaiser admitted to the

24  AG that Hunter had active Medi-Cal coverage when she received Kaiser's services in 2012, that it

25  had assigned the charges to collection, that Kaiser (not Hunter) was responsible for the bill, and

26  that it had the power to "recall" the charges.  *Id.* at ¶¶ 49-53.

27      Hunter states that she has been injured because she had lost the opportunity to secure

28  financing for a home purchase and suffered harm to her credit score, harm to her reputation,

emotional distress, and time lost disputing Kaiser's charges with USCB and the reporting agencies. *Id.* at ¶¶ 55-56. Hunter claims that Kaiser regularly attempts to collect money from Medi-Cal beneficiaries for covered services. *Id.* at ¶¶ 57-59, 63. She brings claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681- 1681x, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1-1787.3, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.33, and California common law, and seeks relief on a class-wide basis. *Id.* at ¶¶ 5, 74-164.

## II.    THE ARBITRATION AGREEMENT AND ENROLLMENTS

Hunter has been a member of Kaiser since 2012. Between 2012 and 2017, she was enrolled in Kaiser's Medi-Cal Managed Care in Contra Costa County. Declaration of Christine Nelson in Support of Kaiser Foundation Health Plan, Inc.'s Motion to Compel Arbitration ("Nelson Decl.") ¶ 10 [Dkt. No. 27-4]. In order to choose Kaiser as a health care provider through Medi-Cal, Hunter was required to fill out, sign, and return a "Medi-Cal Choice Form" to California Department of Health Care Services ("DHCS"). *Id.* ¶¶ 5,10. The Form states:

> **NOTICE**: I have read the plan description. I understand that Kaiser requires the use of binding neutral arbitration to resolve certain disputes. This includes disputes about whether the right medical treatment was provided (called medical malpractice) <u>and other disputes relating to benefits or the delivery of services</u>. If I pick Kaiser, I give up my right to a jury or court trial for those certain disputes. I also agree to use binding neutral arbitration to resolve those certain disputes. I do not give up my right to a State hearing of any issue, which is subject to the State hearing process.

Medi-Cal Choice Form attached as Ex. A to Nelson Decl. [Dkt. No. 27-5]. This form has been used since at least 2012. Nelson Decl. ¶ 5. Hunter does not dispute that she signed this Medi-Cal Choice Form.

In 2018, Hunter enrolled in Kaiser through Covered California. Declaration of Vonya E. Taylor in Support of Kaiser Foundation Health Plan, Inc.'s Motion to Compel Arbitration ("Taylor Decl.") ¶¶ 8-10 [Dkt. No. 27-6]. According to Kaiser, individuals may enroll in health benefit plans by accessing Covered California's online enrollment system ("CalHEERS") and may do so

1    directly or utilize the assistance of a certified agent in person or by telephone.  *Id.* ¶ 5.

2           If an enrollee utilizes the assistance of a certified agent, the agent will walk through the

3    online enrollment forms and disclosures with the enrollee.  *Id.*  As part of Covered California's

4    online enrollment process, the enrollee receives a separate screen regarding binding arbitration

5    that read in 2018 as follows:

6              I understand that every participating health plan has its own rules for
               resolving disputes or claims, including, but not limited to, any claim
7              asserted by me . . . against a health plan . . . about the membership in
               the health plan, the coverage for, or the delivery of, services or items
8              . . . I understand that, if I select a health plan that requires binding
               arbitration to resolve disputes, I accept, and agree to, the use of
9              binding arbitration to resolve disputes or claims (except for Small
               Claims Court cases and claims that cannot be subject to binding
10             arbitration under governing law) and give up my right to a jury trial
               and cannot have the dispute decided in court, except as applicable law
11             provides for judicial review of arbitration proceedings.  I understand
               that the full arbitration provision for each participating health plan, if
12             they have one, is in the health plan's coverage document, which is
               available online at CoveredCA.com for my review, or I can call
13             Covered California for more information.

14   Covered California E-Signature Report from Enrollment attached as Ex. A to Nelson Decl., ¶ 5,

15   Ex. A ["Covered California Form," Dkt. No. 27-7].  Immediately after the enrollee is presented

16   with the above text, the enrollee must provide an "eSignature" upon enrollment that states: "□ I

17   Have Read And Agree To The Binding Arbitration Agreement."  Taylor Decl. at ¶ 6; Covered

18   California Form.  The enrollee cannot proceed further with enrollment if the enrollee does not

19   attest to having read and agreed to the Binding Arbitration Agreement.  Taylor Decl. ¶ 6.

20          The Covered California enrollment system records and stores the electronic eSignature of

21   the enrollee and the date on which the disclosure was signed.  *Id.*  The system also provides a

22   record of that enrollment information to Kaiser.  *Id.*  Kaiser asserts, and Hunter does not dispute,

23   that Hunter accessed CalHEERS with the assistance of a certified agent and that Kaiser accepted

24   her membership application through Covered California in 2018. Taylor Decl. ¶ 8.

25          Kaiser claims that every Membership Agreement that is provided to or made available to

26   participants following their enrollment includes a binding arbitration provision.  Nelson Decl. ¶ 8.

27   The Arbitration Agreement in the 2018 Membership Agreement provides:

28             Arbitrations shall be governed by this "Binding Arbitration" section,

4

Section 2 of the Federal Arbitration Act, and the California Code of Civil Procedure provisions relating to arbitration that are in effect at the time the statute is applied, together with the [Rules for Kaiser Permanente Member Arbitrations Overseen by the Office of the Independent Administrator], to the extent not inconsistent with this "Binding Arbitration" section. In accord with the rule that applies under Sections 3 and 4 of the Federal Arbitration Act, the right to arbitration under this "Binding Arbitration" section shall not be denied, stayed, or otherwise impeded because a dispute between a Member Party and a Kaiser Permanente Party involves both arbitrable and nonarbitrable claims or because one or more parties to the arbitration is also a party to a pending court action with a third party that arises out of the same or related transactions and presents a possibility of conflicting rulings or findings.

2108 Individual Plan Combined Membership Agreement, Disclosure Form, and Evidence of Coverage for Kaiser Permanente for Individuals and Families ("Membership Agreement") attached as Ex. C to Taylor Decl. [Dkt. No. 27-9].

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## DISCUSSION

Kaiser and USCB move to compel Hunter to arbitrate her claims individually pursuant to an arbitration provision contained in Kaiser's Membership Agreements to which Hunter agreed every year since 2012. Kaiser's Motion to Compel Arbitration ("Kaiser MTC") [Dkt. No. 27-1];

USCB, Inc. Motion to Compel Individual Arbitration ("USCB MTC") [Dkt. No. 28].[1]

## I.  THE APPLICABILITY OF CALIFORNIA HEALTH & SAFETY CODE SECTION 1363.1

Hunter counters, first, that no agreement to arbitrate was formed because Kaiser did not comply with Section 1363.1 of the California Health & Safety Code.  Plaintiff's Opposition ("Oppo.") at 2-7 [Dkt. No. 33].  Section 1363.1 reads:

> Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:
>
> (a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.
>
> (b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.
>
> (c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.
>
> (d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan.

Cal. Health & Safety Code § 1363.1.[2]  Courts have held that non-compliance with Section 1363.1

---

[1] Hunter does not oppose USCB's motion to compel on any ground *other* than there is no enforceable agreement to arbitrate between herself and Kaiser.  Dkt. No. 34.  Accordingly, if I find that Hunter must arbitrate her claims against Kaiser, her claims against USCB will also be arbitrable.

[2] Cal. Civ. Proc. Code § 1295(a) provides:

> (a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were

United States District Court
Northern District of California

1    renders an arbitration provision in an enrollment form unenforceable.  *See Malek v. Blue Cross of*

2    *California*, 121 Cal.App.4th 44, 62-63 (Cal. Ct. App. 2004).

3         Hunter argues that Kaiser fails to show that either of its enrollment processes -- the Medi-

4    Cal Choice Form used from 2012-2017, "Medi-Cal period") or the CalHEERS online enrollment

5    portal (used in 2018, "ACA period") -- met the requirements of Section 1363.1.  Oppo. at 4.[3]

6    Kaiser counters that Section 1363.1 is irrelevant because it is preempted by the Patient Protection

7    and Affordable Care Act, 42 U.S.C. §§ 18001 et seq. ("ACA") with respect to the CALHEERS

8    enrollment/ACA period and by the federal Medicaid Act with respect to the Medi-Cal period.

9    Kaiser Reply at 5-8.  Kaiser also argues that if Section 1363.1 applies, the Medi-Cal Choice Form

10   and the CalHEERS portal disclosures comply with Section 1363.1  *Id.* at 2-5.

### A.    Preemption in General

12        Courts have consistently held that the Federal Arbitration Act (FAA) does not preempt

13   Section 1363.1 because the McCarran-Ferguson Act (15 U.S.C. § 1011 *et. seq.*) preserves the

14   ability of states like California to regulate the insurance industry.  *See Brown v. Kaiser Found.*

15   *Health Plan, Inc.*, No. E069356, 2019 WL 2539179, *4 (Cal. Ct. App. June 20, 2019); *Imbler v.*

16   *PacifiCare of Cal., Inc.*, 103 Cal.App.4th 567, 571-573 (Cal. Ct. App. 2002) (purpose of the

17   McCarran-Ferguson Act was to insure that states would continue to enjoy broad authority over

18   regulating dealings between insurers and their policyholders); *Smith v. PacifiCare Behavioral*

19   *Health of Cal., Inc.*, 93 Cal.App.4th 139, 152-162 (Cal. Ct. App. 2001) (same).  Nonetheless,

20   Kaiser argues that Section 1363.1 is preempted because the insurance contracts at issue here are

---

22                unnecessary or unauthorized or were improperly, negligently or
23                incompetently rendered, will be determined by submission to
                  arbitration as provided by California law, and not by a lawsuit or
                  resort to court process except as California law provides for
24                judicial review of arbitration proceedings. Both parties to this
                  contract, by entering into it, are giving up their constitutional right
25                to have any such dispute decided in a court of law before a jury,
                  and instead are accepting the use of arbitration."

26
[3] Hunter notes and Kaiser admits that Kaiser does not possess a copy of any Medi-Cal Choice
27   Forms signed by Hunter because all such forms are sent directly to the California Department of
     Health Care Services ("DHCS").  Oppo. at 4; Kaiser 2 n.1.  She does not dispute (by declaration
28   or otherwise) that she signed the generic Medi-Cal Enrollment Form produced by Kaiser in
     support of its motion.

1  governed by federal law--namely, ACA during the ACA period and the federal Medicaid Act and

2  its regulations during the Medi-Cal period—and not state law.  Kaiser Reply at 5-8.

3  ## B.   ACA Period

4  In order to receive federal insurance premium assistance in 2018, Hunter selected and

5  secured coverage – required under the ACA – through the CalHEERS portal.  The ACA provides

6  that "[n]othing in this title shall be construed to preempt any State law that does not prevent the

7  application of the provisions of this title."  42 U.S.C. § 18041(d).  But Kaiser argues that the

8  requirements of Section 1363.1 actually conflict with and prevent the application of numerous

9  mandates of the ACA, particularly the provisions requiring state exchanges like CalHEERS to

10  allow enrollment online and with the use of call center agents.[4]  Therefore, Section 1363.1's

11  requirements regarding how arbitration agreements must be disclosed and agreed to are preempted

12  and cannot apply to Hunter's ACA enrollment.[5]

13  A recent unpublished California Court of Appeal decision is consistent with Kaiser's

14  argument and is persuasive.  *Simon v. Blue Cross of California*, B292118, 2019 WL 5677552

15  (Cal. App. 2d Dist. Nov. 1, 2019) (unpublished) concluded that enrollment through California's

16  online portal preempted application of Section 1363.1's requirements.  The court explained that as

17  part of California's creation of its ACA exchange, several statutes and promulgating regulations

18  were passed by the California legislature.  *Id.* *6.  In particular, the "Covered California board" in

19

20  [4] The requirements of the ACA and its implementing regulations that Kaiser contends conflict
    with Section 1363.1's requirements are: requiring websites to provide standardized information
21  and access to the health plan's written policy, approved by HHS, 42 U.S.C. § 18031(b), 42 U.S.C.
    § 18083(b), 42 U.S.C § 300gg-15(b)(3)(A); requiring the website to provide information that
22  assists consumers with submitting the eligibility application, clarifying the distinctions among
    health coverage options, including [Qualified Health Plans ("QHP"), helping consumers make
23  informed decisions during the health coverage selection process," 45 C.F.R. § 155.210(e));
    requiring state-based exchanges utilize a website to allow consumers to apply and enroll in
24  exchange coverage, 45 C.F.R. § 155.205(b)(7); requiring exchanges to allow applicants to enroll
    through call centers with the help of agents, 45 C.F.R. §§ 155.220(c)(1) & 155.405(c); and
25  requiring exchanges to use a single, streamlined application process approved by HHS.  45 C.F.R.
    § 155.405(a)-(b)).

26

27  [5] For example, 1363.1(d) requires that "the disclosure required by this section shall be displayed
    immediately before the signature line."  *See also Rodriguez v. Blue Cross of California*, 162 Cal.
    App. 4th 330, 341 (Cal. Ct. App. 2008) (holding that each disclosure required by Section 1363.1
28  must be contained where the enrollee signs, so that evidence of coverage, such as the membership
    agreement here, cannot be incorporated by reference).

charge of setting up the exchange "promulgated regulations describing the enrollment process the exchange would follow in exhaustive detail," including "the requirements for the 'single, streamlined application'" and "the specific language the Covered California application was to use when disclosing binding arbitration requirements that may be incorporated in health plans that would be offered on the exchange." *Id*. The court held that the regulations enacted by California to operate the exchange, including those that "establishe[d] Covered California's mandated arbitration disclosure [ ] limit the extent of Section 1363.1's applicability." *Id*. at *7.

I agree with this reasoning. Given the extensive regulation under both the ACA itself and its implementation by the State of California that govern how applicants can enroll and the mandated methods of disclosing the existence of arbitration required by the underlying health care plans, I hold that the requirements of Section 1363.1 do not apply to Hunter's enrollment and her agreement to the arbitration provisions of the Kaiser health plan during the ACA period.

### C. Medi-Cal Period

Kaiser also argues that the Federal Medicaid Act preempts Section 1363.1 with respect to the Medi-Cal Choice Forms executed by Hunter between 2012 and 2017. Kaiser Reply at 7-8. In support, Kaiser relies on decisions from this District that conclude in light of extensive implementing regulations adopted under the Medicare Act that the requirements of Section 1363.1 were preempted for Medicare Advantage enrollees in Kaiser plans. In *Clay v. Permanente Med. Grp., Inc.*, 540 F. Supp. 2d 1101, 1106-11 (N.D. Cal. 2007) (Conti, J.) the court noted that the Medicare Act preempts all state regulations of Medicare Advantage plans not relating to licensing or plan solvency, including marketing materials, election forms, and disclosure requirements.[6] The court found that the arbitration provision, contained in the evidence of coverage ("EOC"), was "marketing material" approved by the body charged with issuing regulations under the Medicare Act (CMS). Because Section 1363.1 purported to regulate the adequacy of the arbitration disclosures in the EOC, it was preempted. *Id.*

Kaiser argues that based on the reasoning in *Clay,* the Medicaid Act should have a similar

---

[6] The second case cited by Kaiser is *Drissi v. Kaiser Found. Hosps., Inc.*, 543 F. Supp. 2d 1076, 1077 (N.D. Cal. 2008) (Conti, J.). It is a follow-up to *Clay* and mirrors the same analysis.

preemptive effect because it has similar standards and disclosure requirements. Hunter counters

that *Clay* (and *Drissi*) are inapposite because those decisions rely on the exhaustive regulations

and CMS review and approval of materials for plans under the Medicare Act, which were not

similarly adopted or utilized for plans funded through Medi-Cal. I need not resolve this dispute.

Assuming that the Medicaid Act and its regulations do not have the same preemptive effect as the

Medicare Act and its implementing regulations, as discussed below I conclude that the Medi-Cal

Choice Form satisfies Section 1363.1.

## II.     COMPLIANCE WITH SECTION 1363.1

Kaiser argues that if Section 1363.1 applies to the Medi-Cal period, the Medi-Cal Choice

Form satisfies those requirements. The Medi-Cal Choice Form Hunter signed (or does not dispute

she signed) provides the following "notice" almost immediately above the signature line:

> **NOTICE**: I have read the plan description. I understand that Kaiser
> requires the use of binding neutral arbitration to resolve certain
> disputes. This includes disputes about whether the right medical
> treatment was provided (called medical malpractice) and <u>other
> disputes relating to benefits or the delivery of services</u>. If I pick
> Kaiser, I give up my right to a jury or court trial for those certain
> disputes. I also agree to use binding neutral arbitration to resolve
> those certain disputes. I do not give up my right to a State hearing of
> any issue, which is subject to the State hearing process.
>
> **CHOICE STATEMENT**: I/We have made the written choice to
> receive Medi-Cal benefits through the medical plans as I/we have
> indicated on this form. I/We have read and understand the conditions
> of this agreement. I/we understand that in order to change my/our
> current Medi-Cal Health plan, I/We must complete this form.
>
> [**SIGNATURE LINE**].

Medi-Cal Choice Form, Dkt. No. 27-5.

Hunter argues that the arbitration agreement does not satisfy Section 1363.1 because it is

not "prominently displayed" as required by 1363.1(b); does not include wording required by

1363.1(c); and is not "immediately" above the signature line as required by 1363.1(d). I disagree.

The NOTICE is prominently displayed as it is set off from prior section on the page, the word

"**NOTICE**" is in bold and all caps, and the section regarding disputes is <u>underlined</u>. This satisfies

10

the prominent display requirement. [7] The NOTICE is also, effectively, immediately above the signature line, satisfying (d).

Moreover, it is questionable whether the language required by 1363.1(c) applies at all because Kaiser is a licensed health care service plan under the Knox-Keene Health Care Service Plan Act and Section 1295(a) applies to disputes "as to professional negligence of a health care provider." *See* Code Civ. Proc. § 1295(a). Because this is not a medical malpractice claim asserted against a provider, the fact that the Medi-Cal Choice Form does not include the language mandated by Section 1295(a) is not relevant. In any event, the language actually used in the Medi-Cal Choice Form substantially complies with (c), which is all that is required because it clearly informs the reader that the medical malpractice and other claims are subject to arbitration.

If not preempted, I conclude that the requirements of Section 1363.1 were satisfied in the Medi-Cal Choice Form.

## III.    UNCONSIONABLITY

Hunter also argues that the Arbitration Agreement should not be enforced because it is both procedurally and substantively unconscionable. Whether a contract is unconscionable is a question of law. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1663 (Cal. Ct. App. 1993). In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (Cal. Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a

---

[7] Hunter relies on *Burks v. Kaiser Found. Health Plan, Inc.*, 160 Cal. App. 4th 1021 (Cal. App. 3d Dist. 2008), which affirmed a trial court finding that an arbitration provision contained in the one page Kaiser enrollment form was not "prominently displayed." There, however, "the arbitration disclosure [was]printed in typeface that is substantially the same or smaller than the typeface used on the rest of the enrollment form, and that typeface is not highlighted, italicized, or bolded. The notice also lacks any kind of heading. It is simply a paragraph of small text at the end of the enrollment form immediately above the space for the enrollee's signature." *Id.* at 1025. Here, the Medi-Cal Choice Form uses a bolded **NOTICE** and underlined text to draw attention to the agreement to arbitrate, and the font size is consistent with the majority of the font size in the Form. Dkt. No. 27-5. *See also Imbler v. PacifiCare of Cal., Inc.*, 103 Cal. App. 4th 567 (Cal. App. 4th Dist. 2002) (agreement does not satisfy Section 1363.1's prominence requirement where sentence was written in the middle of the authorization for the release of medical records, was in the same font as the rest of the paragraph, and was not bolded, underlined or italicized).

"substantive" element.  *Id*.

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document.  *Id*.  "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree."  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).  Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner."  *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted).  "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause."  *Id*. at 824-25 (citation omitted).  Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree.  Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000).

Hunter contends that the Agreement is procedurally unconscionable because it was a contract of adhesion that she was forced to enter (as she had only limited choice, and under the ACA had to select at least one plan) and because the actual terms of the Agreement were not provided until after she agreed to arbitration through the one page form or online enrollment portal.  The Agreement is substantively unconscionable, she argues, because: (1) it prevents her from recovering attorney fees if successful, which would be available to her under the consumer protection statutes she invokes; (2) it forces her to share costs of arbitration with Kaiser, which she would not normally bear in litigation; and (3) its rules of arbitration are skewed in favor of Kaiser, which helped develop the rules.

### A.    Procedural Unconscionability

Hunter asserts that the Agreement is procedurally unconscionable because it resulted from a contract of adhesion forced upon her by a substantially more powerful party.  Oppo. at 9-10.  She claims that as a person of limited means who was required to maintain minimum effective

12

coverage under the ACA, she only had three health plans from which to select coverage. *Id.* The absence of meaningful choice, she argues, supports a finding of procedural unconscionability. *Id.* She also asserts that the arbitration provision's terms were disclosed in a confusing way within a lengthy (111-page) document that covered a wide array of subjects and was provided to her only after she had purportedly agreed to them. *Id.* Therefore, she claims that she was not given a fair opportunity to review the full nature and extent of the arbitration provision before she signed it. *Id.*

Kaiser counters that Hunter had a meaningful choice between three plans. She chose Kaiser each year since at least 2012, showing that she preferred Kaiser over other health plan options. Kaiser Reply at 9-10. She also had the opportunity to review her Medi-Cal Choice Form and Membership Agreement each year since 2012; each Membership Agreement contained the same binding arbitration clause. Nelson Decl., ¶¶ 8, 10. The Membership Agreement clearly labels the "Binding Arbitration" clause, describes the terms in plain language, and lists the clause in the table of contents. Membership Agreement [Dkt. No. 27-9] at TOC, 65. Additionally, the Medi-Cal Choice Form that Hunter filled out each year from 2012 to 2017 provided "NOTICE . . . that Kaiser requires the use of binding arbitration to resolve certain disputes. . . ." And when she enrolled through Covered California in 2018, she was prompted to review and check a box acknowledging that "the full arbitration provision for each participating health plan . . . is in the health plan's coverage document, which is available online at CoveredCA.com for [her] review, or [she] can call Covered California for more information." *Id.* (citing Medi-Cal Choice Form; Covered California E-Signature Report from Enrollment, attached as Ex. A to Taylor Decl. [Dkt. No. 27-7]).

Because the Membership Agreement agreed to through Medi-Cal Choice Forms and CalHEERS e-signature page was a contract of adhesion, it is "procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Fran. Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (in California, "contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, [are] procedurally unconscionable to at least some degree."). But that limited degree of unconscionability is as far as it goes.

13

Hunter cites to *Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1026 (N.D. Cal. 2008) for the proposition that a lack of market alternatives demonstrates procedural unconscionability.  In *Stiener*, the court held that, at the time, the iPhone was the only "breakthrough" device and was unique among wireless products because it combined "into one small, lightweight, handheld device . . . desktop-class email, web browsing, searching and Google Maps."  *Id.*  There were no alternative smartphones (unlike today) and the court held that this added an additional amount of procedural unconscionability.  But that is not the case here.  At least for the ACA period, Hunter had two other alternatives and she does not argue that something about these alternatives (or those available to her during the Medi-Cal period) rendered them illusory.  Moreover, by the time Hunter signed up through CalHEERS in 2018, she had been provided an opportunity to review the Membership Agreement containing the same Arbitration Agreement for six years.

Accordingly, the amount of procedural unconscionability is low.  Hunter needs to demonstrate a high degree of substantive unconscionability in order to prevent enforcement of the arbitration provision against her.  *Armendariz*, 24 Cal. 4th at 114.

## B.   Substantive Unconscionability

### 1.   Fee Shifting and the Cost of Arbitration

Hunter contends that the agreement is substantively unconscionable because it precludes her from seeking her attorney fees if successful and requires her to share the costs of arbitration with Kaiser.  Oppo. at 10-13.  Hunter identifies the problematic portions of the arbitration agreement as: (1) "each party shall bear the party's own attorneys' fees, witness fees, and other expenses incurred in prosecuting or defending against a claim regardless of the nature of the claim or outcome of the arbitration," Membership Agreement at 67;[8] and (2) "[i]n any dispute between a Member and [Kaiser], each party will bear its own fees and expenses, including attorneys' fees,

---

[8]  "**Costs**.  Except for the aforementioned fees and expenses of the neutral arbitrator, and except as otherwise mandated by laws that apply to arbitrations under this "Binding Arbitration" section, each party shall bear the party's own attorneys' fees, witness fees, and other expenses incurred in prosecuting or defending against a claim regardless of the nature of the claim or outcome of the arbitration."  Membership Agreement at 67.

advocates' fees, and other expenses." *Id.* at 70.[9]

Regarding attorney fees, Hunter argues that without the fee-shifting incentives present in consumer protection statutes she invokes in this case (CCRAA, Cal. Civ. Code § 1785.31(a) and FCRA, 15 U.S.C. §§ 1681n, 1681o), consumers are left to fend for themselves without competent representation, undermining the intent of the California legislature and the United States Congress to incentivize private enforcement. Oppo. at 11. She asserts that by limiting the remedies provided to plaintiffs, the arbitration provision has a chilling effect on consumers' pursuit of statutory consumer-protection claims while insulating Kaiser from liability. *Id.* She relies on *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, where the court held that arbitration provisions that "flatly prohibit the arbitrator from shifting discovery costs and expert fees to the losing party, no matter the circumstances and even when California law dictates a different result," were substantively unconscionable, but severable. *Ridgeway v. Nabors Completion & Prod. Services Co.*, 725 Fed. Appx. 472, 474 (9th Cir. 2018). She contends that because the Agreement here prohibits fee shifting for various costs as well as attorney fees, the Agreement "effectively blocks every forum for the redress of disputes, including arbitration itself." Oppo. at 10-11 (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (Cal. 2013).

Kaiser does not respond to this point other than to argue that Hunter has not shown that she will incur *more* attorneys' fees in arbitration than in Court. *Id.* That is not the point. It does not matter what fees Hunter incurs during the litigation itself. It matters that if she is successful, under California law she could recover her attorney fees. That law incentivizes attorneys and plaintiffs to bring the consumer protection claims Hunter asserts in this case. *See* Cal. Civ. Code § 1785.31(a)); 15 U.S.C. §§ 1681n(a)(3), 1681o(b). If those incentives are removed, the vindication of California's consumer protection statutes suffers. *Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 709–710 (2013) (finding arbitration agreement unconscionable because it deprived employee of a favorable fee-shifting rule under the California Fair Employment and

---

[9] "**Attorney and Advocate Fees and Expenses**. In any dispute between a Member and Health Plan, the Medical Group, or Kaiser Foundation Hospitals, each party will bear its own fees and expenses, including attorneys' fees, advocates' fees, and other expenses." *Id*. at 70.

Housing Act (FEHA)).  To the extent this provision precludes Hunter from recovering attorney fees if she is successful, which is what is appears to intend on its face, it is substantively unconscionable.

Concerning Hunter's challenge to the provision of the Arbitration Agreement imposing costs of arbitration upon her (that she would not have to bear in traditional litigation), she points to language that: "the fees and expenses of the neutral arbitrator shall be paid one-half by the Claimants and one-half by the Respondents."  Membership Agreement at 67.[10]  She contends these costs can be substantial and that the consumer-protection statutes under which she brings suit do not burden consumers with these additional costs.  *Id.*  She also points out that in the *Ridgeway* case, the cost of arbitration provision was saved only because the court read it in conjunction with other language to conclude the claimant would pay "only $150—the rest of the fees 'shall be borne equally by the Parties who are not Employees/Applicants.'"  *Id.*, 725 Fed.App.4th at 474.  As the California Supreme Court has recognized, "'[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high.  Whatever preference for arbitration might exist, it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself.'"  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1144–45 (2013) (quoting *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 90 (2003)).

Kaiser counters that Hunter has failed to meet her burden to show that arbitration would be prohibitively expensive.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[A] party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood.").  It notes that under the Rules of the Office of the Independent Administrator ("OIA"), which govern Kaiser arbitrations, a

---

[10] "**Payment of arbitrators' fees and expenses.**  Health Plan will pay the fees and expenses of the neutral arbitrator under certain conditions as set forth in the Rules of Procedure.  In all other arbitrations, the fees and expenses of the neutral arbitrator shall be paid one-half by the Claimants and one-half by the Respondents.  If the parties select party arbitrators, Claimants shall be responsible for paying the fees and expenses of their party arbitrator and Respondents shall be responsible for paying the fees and expenses of their party arbitrator."  *Id*. at 67.

claimant may shift the obligation of paying fees and expenses, the filing fees and the fees for the arbitrator, to Kaiser. *Id.* (citing OIA Rules 12, 13).[11] Rules 12 and 13 allow the claimant to seek a waiver of both the $150 filing fee as well as the claimant's share of the neutral's fee. Kaiser also contends that Hunter can ask Kaiser to pay the entire cost of the arbitration and submits evidence that it has paid the entire cost of the neutral arbitration in 93% of cases that closed in 2018. OIA Report, p. xi.[12]

Kaiser's arguments have some persuasive authority. But as the California Supreme Court has explained, "imposing arbitral forum fees that are prohibitively high" is unconscionable. *Sonic-Calabasas A, Inc.*, 57 Cal. 4th at 1144–45. That plaintiffs apparently need to proceed to arbitration against Kaiser and then see whether they will receive a fee waiver is problematic.

### 2. Use of OIA Rules

Hunter also argues that Kaiser's use of its "own" OIA rules, as opposed to the commonly used rules of either the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS"), is unconscionable. Oppo. at 12-13. She alleges that Kaiser has designed the rules and governing body to favor itself because the OIA exists only to "administer [] arbitrations between Kaiser Foundation Health Plan, Inc. and its California health plan members." *Id.* Even if a non-OIA arbitrator were selected, she would have been vetted and selected by the OIA and required to apply the OIA Rules. *Id.*

Hunter says that this raises concerns of arbitral bias. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010). In *Pokorny*, the Ninth Circuit considered the mandated use of the defendant-trained arbitrators, concluding that use of those arbitrators was to defendant's advantage, a fact about which claimants were not informed. *Id*. at 1003. The *Pokorny* court concluded that the mandated use of those arbitrators was a contributing factor to the substantive unconscionability of the arbitration agreement.

---

[11] Kaiser asks me to take judicial notice of the OIA Rules, available at https://www.oia-kaiserarb.com/pdfs/Rules.pdf. That request is GRANTED.

[12] Kaiser also asks me to take judicial notice of the OIA Report that plaintiff relies upon in her Opposition at https://www.oia-kaiserarb.com/pdfs/2018-Annual-Report.pdf. That request is GRANTED.

1    Kaiser counters that Hunter's suggestions of bias are unfounded. In 2018, 48% of

2  arbitration claimants received compensation from Kaiser, either as a result of settlement or

3  hearing. OIA Report, p. xi. It also notes that the arbitrators on the OIA panel are neutral and have

4  plaintiff, defendant, and judicial backgrounds. *Id.* at xii. It points out that all OIA arbitrators are

5  required to follow the Ethics Standards set forth in the California Rules of Court and AAA Code

6  of Ethics for Arbitrators in Commercial Disputes. OIA Rule 4. It concludes that there is nothing

7  substantively unconscionable about requiring arbitration before an OIA arbitrator.

8    I find that on the limited record before me, the use of OIA rules raises the slight specter of

9  arbitral bias. But Hunter has failed to point out any particular OIA rule that would, as she says,

10  "place a finger on the scale" in Kaiser's favor. In addition, she does not identify any particular

11  selection criteria or training mandated by Kaiser for OIA arbitrators that was undisclosed or would

12  lead to Kaiser's advantage. Absent additional evidence, I cannot conclude that use of OIA

13  arbitrators creates a substantively unconscionable advantage for Kaiser.

14    **3.    Severability**

15    Kaiser does not directly address severability of any substantively unconscionable

16  provision, but its co-defendant USCB suggests that I sever the unconscionable substantive

17  provisions rather than refuse to enforce the Agreement in its entirety. USCB, Inc.'s Reply at 8-9

18  [Dkt. No. 40]. Hunter opposes severance, arguing that because the Agreement is "permeated"

19  with unconscionability, the whole agreement is "tainted with illegality" and severance is not

20  appropriate. However, as noted above, it is only the attorney fees and cost-splitting provisions

21  that I have determined are substantively unconscionable. Those discrete provisions can be severed

22  without rewriting or defeating the purpose of the mutually agreed-to arbitration provision. *See,*

23  *e.g.*, *Baker v. Acad. of Art Univ. Found.*, No. 17-CV-03444-JSC, 2017 WL 4418973, at *5 (N.D.

24  Cal. Oct. 5, 2017) (severing was warranted because "California courts prefer to sever provisions

25  rather than hold an entire agreement unenforceable[,]" the provision at issue was not integral to the

26  remaining terms and was easily severable, and in light of the strong public policy favoring

27  arbitration).

28

## IV.    CLASS OR INDIVIDUAL ARBITRAITON

Hunter argues that if arbitration of any of her claims is required, the arbitration should be on a class-wide basis in light of the clear terms of the applicable Arbitration Agreements.  I disagree.

The Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  This is because "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687.  The Court recently reaffirmed *Stolt* in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), holding that under the FAA an ambiguous agreement cannot provide the necessary contractual basis for concluding that the parties agreed to submit to class arbitration.  "Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration." *Id.* at 1416.

Hunter contends that the arbitration provision expressly contemplates plural and therefore class-wide dispute resolution because included within the "Scope of Arbitration" in the Agreement are claims where, "[t]he claim is asserted by one or more Member Part*ies* against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Part*ies*." Membership Agreement at 67 (emphasis added).  She points out that in nine of the eleven times the Agreement uses the word "Claimant," it is the plural "Claimants."[13]

The references to plural parties or claimants, at best, only create the kind of ambiguity that the Supreme Court addressed in *Lamps Plus*.  Reading the relevant provisions of the Agreement in full, in particular the "Binding Arbitration" section at pages 65-67, there is no clear provision for

---

[13] *See* Arbitration Agreement at 67 ("**Initiating arbitration**.  Claimants shall initiate arbitration by serving a Demand for Arbitration. The Demand for Arbitration shall include the basis of the claim against the Respondents; the amount of damages the Claimants seek in the arbitration; the names, addresses, and telephone numbers of the Claimants and their attorney, if any; and the names of all Respondents. Claimants shall include in the Demand for Arbitration all claims against Respondents that are based on the same incident, transaction, or related circumstances."),

19

class-wide or group arbitration. The plural references relied on by Hunter are mostly general references to how arbitration of individual claims proceed, not commitments to allowing multiple claims to be grouped in one proceeding. Hunter must arbitrate her claims individually.

## V.     PUBLIC INJUNCTIVE RELIEF

Hunter also asks that if she is compelled to arbitrate her claims, I should retain jurisdiction over and proceed to litigate her claims in Counts 1, 2, 3, and 8 because they seek "public injunctive relief" and are not arbitrable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (Cal. 2017).[14] In *McGill*, the California Supreme Court held that an arbitration agreement precluding a consumer from seeking injunctive relief otherwise authorized by California's consumer protection statutes in any forum was "invalid and unenforceable under state law insofar as it purports to waive McGill's statutory right to seek such relief." *McGill*, 2 Cal. 5th at 961; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) (affirming that the FAA did not preempt the *McGill* rule and finding district court did not err by refusing to stay non-arbitrable claims). The *McGill* Court explained that "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.' . . . Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955 (internal citations omitted).

Kaiser argues that because the Agreement at issue here does not preclude public injunctive relief, the *McGill* rule is inapposite. It relies on *Lee v. Postmates Inc.*, where a judge in this District addressed a similar arbitration agreement. In *Lee*, the court concluded that because the arbitration agreement (which included a class action waiver) did *not* prevent the arbitrator from awarding public injunctive relief, the *McGill* rule did not apply and the claims were subject to

---

[14] Count 1 alleges Violation of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25(a); Count 2 alleges Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); Count 3 alleges violation of Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and Count 8 alleges violation of Violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33.

arbitration. *Lee v. Postmates Inc.*, 18-CV-03421-JCS, 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15, 2018), *motion to certify appeal granted*, 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr. 25, 2019); *see also Ionescu v. Extra Space Storage Inc.*, 19-CV-02226-YGR, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019) ("That the Arbitration Provision prohibits plaintiffs from proceeding 'on a representative basis' . . . does not mean that an arbitrator cannot award injunctive relief benefiting the public at large. As *McGill* itself makes clear, an action seeking public injunctive relief is not a "representative action."); *Garcia v. Kakish*, 1:17-CV-00374-JLT, 2017 WL 2773667, at *7 (E.D. Cal. June 27, 2017), *report and recommendation adopted*, 1:17-CV-00374-JLT, 2017 WL 4325777 (E.D. Cal. Sept. 29, 2017) (declining to invalidate arbitration agreement under *McGill* where there were was no "explicit provision waiving a buyer's right to seek public injunctive relief, and no agreement between the parties regarding whether the effect of the provision constitutes such a waiver.").

Hunter points to nothing in the Agreement here that would preclude the arbitrator from awarding public injunctive relief. The *McGill* rule does not apply. All of Hunter's claims will be sent to arbitration.[15]

## CONCLUSION

Kaiser's and USBC's motions to compel arbitration are GRANTED in full, except that the substantively unconscionable provisions concerning fee shifting and the costs of arbitration as identified above are severed and unenforceable. This case will be administratively closed pending completion of the arbitration. Every 180 days from the date below, counsel shall file a joint Status Update informing me about the status of the arbitration.

**IT IS SO ORDERED.**

Dated: January 17, 2020

William H. Orrick
United States District Judge

---

[15] For this reason, I need not determine whether the injunctive relief Hunter seeks is more akin to public injunctive relief or private injunctive relief.

United States District Court
Northern District of California